Spahn & Rose Lumber Company v. Commissioner.
Spahn & Rose Lumber Co. v. Commissioner
Docket No. 106747.
United States Tax Court
1942 Tax Ct. Memo LEXIS 55; 1 T.C.M. (CCH) 181; T.C.M. (RIA) 42628; December 8, 1942
*55 Arnold Schaetzle, Esq., 203 Hubbell Bldg., Des Moines, Ia., for the petitioner. G. W. Reardon, Esq., for the respondent. MELLOTT
Memorandum Opinion MELLOTT, J.: Respondent determined deficiencies of $1,304.71 in income tax and $296.60 in excess profits tax for the taxable year 1939. The sole issue is whether the "preferred stock" certificates issued by petitioner evidence an indebtedness, rather than what their name connotes, and whether payments made as dividends thereon, pursuant to corporate resolutions, constitute interest payments for income tax purposes. The facts are stipulated. [The Facts] Petitioner, an Iowa corporation, has its principal offices and place of business at Dubuque, Iowa. From inception, on January 25, 1904, the petitioner has been engaged in the business of operating retail lumber yards in the State of Iowa and in surrounding states. The original capital stock of the petitioner consisted of the sum of $100,000, divided into 1,000 shares of common stock each of the par value of $100. On March 12, 1907, the articles of incorporation were amended, increasing the authorized capital stock to $150,000 of common stock, and on December 21, 1912, the articles *56 of incorporation were again amended, increasing the authorized common stock to $300,000. On February 2, 1914, the stockholders of petitioner corporation further amended its articles of incorporation, increasing the authorized capital stock to a total of $450,000, of which $300,000 was common stock and $150,000 was denoted and issued as preferred stock. Such amended articles provided for: payment of cumulative dividends of 6 percent per annum on the preferred stock out of earnings or surplus; priority to the preferred stockholders over common stockholders in event of liquidation of petitioner; retirement after two years from date of issuance by petitioner of such preferred stock by a majority vote of the common stockholders at 102 percent of face value plus cumulative dividends, or upon the demand of the preferred stockholders at 98 percent of face value plus cumulative dividends, with the option in petitioner to make such retirement payments in four equal annual installments; and that if dividends on such preferred stock remained unpaid for 6 months or more, such stock would become enfranchised and have equal voting power with the common stock. On November 5, 1917, the articles *57 of incorporation were further amended, increasing the authorized amount of denoted preferred stock from $150,000 to $300,000. Pursuant to this amendment, the additional amount of $150,000 of denoted preferred stock was at that time duly issued and became outstanding. On December 19, 1922, the articles of incorporation were again amended, increasing the authorized amount of common stock to $600,000 and authorizing an issue of non-voting common stock in the amount of $50,000. This amendment did not affect the denoted preferred stock. The amended articles provided for: payment of cumulative dividends of 6 percent per annum on petitioner's preferred stock out of earnings or surplus; priority to the preferred stockholders over common stockholders in event of dissolution and liquidation of petitioner; retirement of the preferred stock at par value plus cumulative dividends by a majority vote of the common stockholders, or upon the demand of the preferred stockholders, in which latter event the petitioner was to have the option to make its retirement payments in four equal annual installments; and, if dividends on the preferred stock remained unpaid for 6 months or more, such stock was to *58 become enfranchised and have equal voting power with the common stock. On January 29, 1924, the articles of incorporation were renewed for an additional period of 20 years, but no change was made in the capital stock structure of the corporation. The renewal articles also provided for: payment of cumulative dividends of 6 percent per annum on petitioner's preferred stock out of earnings or surplus; priority to the preferred stockholders over common and non-voting stockholders in event of liquidation of petitioner; retirement of such preferred stock at par plus cumulative dividends by a majority vote of the common stockholders, or upon the demand of the preferred stockholders, in which latter event the petitioner would have the option to make its retirement payments in four equal annual installments; and that if dividends on the preferred stock remained unpaid for 6 months or more such stock would become enfranchised and have equal voting power with the common stock. The renewal articles of incorporation (Article X) also provided that "The highest amount of indebtedness to which this corporation may at any time subject itself shall not exceed two-thirds of its capital stock of all *59 kinds issued and outstanding." The indebtedness of petitioner, exclusive of said designated preferred stock, as of January 1, 1939, and December 31, 1939, was $339,475.66 and $384,660.49, respectively. The issued and outstanding capital stock of petitioner, including said designated preferred stock and common stock, totaled $808,000 during the year 1939. On April 13, 1927, the articles of incorporation were once more amended, increasing the authorized capital stock to $1,000,000, divided into shares of $100 each, of which stock so authorized $650,000 shall be known as common stock, $50,000 shall be known as non-voting stock and $300,000 shall be known as preferred stock. There were no further amendments to the articles of incorporation. From and after the last amendment, and until October 26, 1937, the authorized capital stock consisted of $650,000 common, $50,000 non-voting common and $300,000 denoted preferred stock. On October 26, 1937, at a special meeting of the common stockholders, a resolution was duly adopted providing for the retirement of $150,000 of the denoted preferred stock, with payment to be made therefor by issuance of coupon notes, bearing interest at 6 percent *60 per annum, due on or before January 24, 1944. The resolution further provided that any interest due on such notes and remaining unpaid for 10 days should cause the whole note to become due and payable at the option of the holder thereof. Pursuant to said resolution $150,000 of said denoted preferred stock was exchanged for $150,000 of debenture notes. Said debenture notes in the amount of $150,000 are listed on the balance sheets as liabilities. Throughout the year 1939 certificates designated "Preferred Stock" in the aggregate amount of $150,000 were outstanding. The rights and obligations of the holders thereof and of the company were set out in the renewal and substituted articles of incorporation and amendments thereto, referred to above. On January 12, 1939, the board of directors of petitioner adopted the following resolution: "Be it resolved, that the officers of this corporation be, and they are hereby authorized, to pay as they become due on July 1, 1939, the regular specified dividends on preferred stock outstanding at the time payment becomes due, out of the earnings of this year without further action of the Board of Directors." Pursuant thereto petitioner paid $4,500 *61 to the holders of the denoted preferred stock. On December 22, 1939, the board of directors of petitioner entered the following resolution: "On motion of J. C. Collier, seconded by A. F. Nonnemacher and unanimously carried, a dividend of 3% on the outstanding preferred stock was declared, to be paid immediately out of 1939 earnings." Pursuant thereto, petitioner paid $4,500 to holders of the denoted preferred stock, making a total of 6 percent or $9,000 paid to them during 1939. Petitioner treated the designated preferred stock of $150,000 as part of its capital structure, as distinguished from its bonded indebtedness, and in its returns filed with the Collector of Internal Revenue for the District of Iowa, it declared a valuation on such preferred stock for capital stock and excess-profits tax purposes for the taxable year 1939. In its income tax return for 1939, petitioner did not claim as a deduction the said sum of $9,000 accrued and paid to the holders of its denoted preferred stock for that year. It now claims, however, that the said sum is deductible for income and excess-profits tax purposes as interest paid, which contention is denied by respondent. [Opinion] In *62 support of its contention petitioner relies upon the following provision contained in its amended and substituted Articles of Incorporation and in the certificates issued to the holders: At any time after two (2) years from the date of the certificates therefor an owner of preferred stock, upon giving ninety (90) days notice in writing to the corporation through its President and Secretary, may demand that the corporation purchase and retire all or any portion of said stock held by such owner, at par plus accumulated dividends to date, and the corporation shall be required to purchase and retire such stock on said terms. Provided, however, that the corporation may, at its option, elect to purchase and retire such stock in four (4) equal portions by making four (4) equal annual payments therefor, the first payment to be made at the expiration of the ninety (90) days notice herein provided and the remaining payments to be made in one, two and three years thereafter. Petitioner urges that, regardless of the designation of its securities as preferred stock, the above provision rendered the securities nothing more than demand notes in the hands of the holders thereof after two years *63 from the date of issuance, and, since the holders had the right to demand payment upon a fixed or ascertainable maturity date, that the securities represented an indebtedness and not a proprietary interest. In Commissioner v. Meridian & Thirteenth Realty Co., C.C.A. 7, November 5, 1942, the court in considering a similar contention, said: Great reliance is placed upon the fact that the stock has a definite maturity date, comparable to a creditor's obligation, which also has a definite date for payment. This factor may be considered, of course, but it is not conclusive. In some situations it yields readily to contrary inferences. * * * * *
The question, whether a particular obligation is a debt or a stock interest within the meaning of the Revenue Act, must be determined in the light of all the facts. The stipulated facts, in our judgment, show that petitioner correctly treated the $150,000 as outstanding "Preferred Stock" and the amounts paid to the holders of the certificates as dividends. There are many facts and circumstances supporting this conclusion, which collectively out-weigh the sole fact relied upon by petitioner - that the stock, during the taxable year, had *64 a definite maturity date. In this connection it may be pointed out that the certificates were designated "Preferred Stock" and called for the payment of "cumulative dividends." They were issued pursuant to corporate resolutions and articles of incorporation designating them as "Preferred Stock" and were so treated by petitioner in its balance sheets, in its information returns filed in connection with its capital stock tax and in its income and excess-profits tax returns. The resolutions, articles and certificates specifically provided for the payment of dividends and the payments so made were shown on the returns as dividends. Under somewhat similar circumstances it was held in , that preferred stock was, as it purported to be, evidence of a proprietary interest in the corporation rather than on indebtedness, as contended by the taxpayer, and this holding was recently affirmed. (certiorari denied October 12, 1942). A similar conclusion was reached in Commissioner v. Meridian & Thirteenth Realty Co., supra, and *65 in . On the authority of the cited cases we hold that the $9,000 constituted dividends upon stock and said amount may not be deducted from gross income as interest paid upon an indebtedness. Judgment will be entered for the respondent.